UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SARA JAQUES O.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. C19-177-MLP

ORDER

## I.      INTRODUCTION

      Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in evaluating the medical evidence; discounting statements by Plaintiff and three lay witnesses; and assessing Plaintiff's residual functional capacity ("RFC"). (Dkt. # 16.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings.

## II.      BACKGROUND

      Plaintiff was born in 1977, completed two years of college, and has worked as a title clerk, telemarketer, receptionist, production worker, machine operator, fork lift operator, and in

customer service. AR at 332-33, 338, 397. Plaintiff was last gainfully employed in 2008. *Id.* at 332.

On January 27, 2010, Plaintiff applied for benefits, alleging disability as of July 1, 2008. AR at 323. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 118, 119, 168-69. After ALJ Glenn G. Meyers conducted hearings on February 23, 2012 and June 12, 2012, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 34-84, 120-132. The matter was subsequently remanded by the Appeals Council. *Id.* at 140-43. ALJ Meyers conducted a third hearing on January 22, 2015, and issued a decision finding Plaintiff not disabled. *Id.* at 11-23. The Appeals Counsel declined review and Plaintiff appealed the final decision of the Commissioner to the United States District Court for the Western District of Washington. *Id.* at 1-4. The Honorable Karen L. Strombom issued an order reversing ALJ Meyers' decision, and remanding the matter for further administrative proceedings. *Id.* at 1133-42. ALJ Virginia Robinson conducted Plaintiff's fourth hearing on June 8, 2018 and issued a decision finding Plaintiff not disabled. *Id.* at 1040-52.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 2008 through her date last insured of December 31, 2012.

Step two: Plaintiff has the following severe impairments: lumbar spine degenerative disc disease; fibromyalgia; sleep apnea; obesity; migraine headaches; learning disorder; affective disorders (bipolar disorder and depression); anxiety disorders (anxiety, social phobia, agoraphobia, and panic disorder); impulse control disorder; pain disorder; and personality disorders (personality disorder, borderline personality characteristics, and B traits) (20 CFR 404.1520(c)).

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

Residual Functional Capacity: through the date last insured, Plaintiff could perform light work as defined in 20 CFR 404.1567(b) with limitations. She could lift and carry up to twenty pounds occasionally and up to ten pounds frequently; she could stand and walk for approximately six hours and sit for approximately six hours per eight-hour workday with normal breaks; she could occasionally stoop, kneel, crouch, and crawl; she has limited to simple routine tasks, in a routine work environment with simple work related decisions; and she was limited to only superficial interaction with coworkers and occasional superficial or incidental interactions with the public.

Step four: Through the date last insured, Plaintiff was unable perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 1040-52.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 16.)

## III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.    DISCUSSION

### A.    Prior Remand Order

As discussed above, this matter was previously remanded for a fourth administrative hearing by this Court. AR at 1133-42. Judge Strombom found the ALJ's evaluation of the opinion evidence of Kristin Young, PA-C constituted reversible error, and therefore also reversed the ALJ's assessment of Plaintiff's RFC and step five finding. *Id.* at 1134. The Court declined to reach the remaining assignments of error.

Despite the Court not reaching the other alleged errors, ALJ Robinson found that Judge Strombom had affirmed ALJ Meyers' evaluation of Plaintiff's subjective symptom testimony and his evaluation of Dr. Picco and Chiropractor Jeffrey's opinion evidence. *Id.* at 1047-48. Plaintiff argues ALJ Robinson erred by finding that Judge Strombom's remand order affirmed Plaintiff's subjective symptom testimony and the evaluation of Dr. Picco and Chiropractor Jeffrey's opinion, and also by incorporating the analysis of the ALJ Meyers' vacated decision regarding those alleged errors.[3] (Dkt. # 16 at 5-6.) Plaintiff further argues the ALJ should have instead re-evaluated all the evidence. (*Id.* at 6.)

---

[3] Plaintiff has not cited to any binding authority, and the Court is aware of none, that bars the ALJ from adopting and incorporating assessments from a prior vacated ALJ's decision which were not reversed by a remand order. The Court finds no error in ALJ Robinson adopting and incorporating parts of ALJ Meyers' decision that were not specifically reversed by Judge Strombom's order.

As noted above, the Court finds that Judge Strombom's order only addressed the ALJ's evaluation of Ms. Young's opinion evidence, and any implications that error had on the RFC determination and step five findings. Because the other assignments of error have not been ruled on, the Court will consider each of Plaintiff's alleged errors raised on appeal (dkt. # 16 at 1.).

**B.      The ALJ Erred in Evaluating Plaintiff's Testimony**

*1.      Legal Standards for Evaluating Plaintiff's Testimony*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Charter*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ

may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. AR at 1046. Specifically, the ALJ found Plaintiff's allegations of impairments were not consistent with the objective medical evidence or with Plaintiff's activities of daily living, and that her impairments were effectively controlled with treatment. *Id.* at 1046-48. The Court will address each reason in turn.

### 2.     *Inconsistency with the objective medical evidence*

The ALJ details a number of objective medical findings that she interprets to be inconsistent with Plaintiff's allegations. AR at 1046-47. With regard to Plaintiff's physical impairments, Plaintiff alleges she could not work due to back and body pain, fibromyalgia, and migraines. *Id.* at 331, 375, 390. Plaintiff also alleges she could not sit, stand, or walk for prolonged periods, had difficulty using her hands, and was constantly fatigued and stayed in bed the majority of the day. *Id.* at 331. The ALJ found the record showed otherwise. Specifically, the ALJ found that physical exam notes during the period at issue showed normal gait, normal full 5/5 strength, and intact sensation. *Id.* at 1046 (citing *id.* at 478, 741-42, 748, 826, 1022). The ALJ also noted that Plaintiff was not receiving treatment for fibromyalgia in August 2009, despite complaints of joint pain resulting from her fibromyalgia, and that she made no dramatic pain complaints during an appointment to establish pain management for her fibromyalgia. *Id.* at 1046

(citing *id.* at 499, 512). Additionally, the ALJ found physical examinations showed normal range of motion of Plaintiff's extremities, including her hands, fingers, wrists, shoulders, ankles, knees, and hips, and that she had no synovitis. *Id.* (citing *id.* at 476-79, 518, 920, 1019, 1022).

Plaintiff argues objective medical evidence of normal findings, such as normal gait and range of motion, as well as full strength and intact sensation, are insufficient to discredit a claimant's testimony who suffers from fibromyalgia because examinations for this disease can produce normal results. (Dkt. # 16 at 7.) In *Revels*, the Ninth Circuit provided the following background regarding fibromyalgia and how it should be evaluated in the context of a Social Security appeal:

> Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis.

*Revels v. Berryhill*, 874 F.3d 648, 656-57 (9th Cir. 2017) (internal quotations and citations omitted).

The Court agrees that the ALJ erred in discounting Plaintiff's testimony because objective examination results showing normal findings were inconsistent with Plaintiff's alleged physical symptoms. The Ninth Circuit has warned against using such findings as a basis to discount the testimony of claimants diagnosed with fibromyalgia. *See id.* Thus, inconsistency between Plaintiff's alleged impairments and normal medical findings was not a sufficient reason to discount Plaintiff's testimony regarding her fibromyalgia symptoms.

Plaintiff also argues the ALJ erred in discounting Plaintiff's testimony because she was not being treated for fibromyalgia in 2009, and the lack of dramatic pain complaints during a November 2009 examination. (Dkt. # 16 at 7.) During the November 2009 examination, Plaintiff reported that although she was diagnosed with fibromyalgia in 1994, the only treatment recommendations provided to her were to "live with it" and take ibuprofen. AR at 512-13. The purpose of the November 2009 examination was to establish pain management for Plaintiff's fibromyalgia, rather than just live with the pain as she had been doing up to that point, including several months prior in August 2009. *Id.* at 512. Further, while there were no noted "dramatic' pain complaints during the examination, the examination notes show Plaintiff reported pain all over her body, increased sensitivity in her extremities, and had an average pain level of 6. *Id.* at 513.

With regard to Plaintiff's migraines, the ALJ noted that she attributed her migraines to stress and birth control, and subsequently quit her job and stopped birth control. AR at 1046 (citing *id.* at 467-68, 470, 473).[4] Although the medical records cited by the ALJ do note that stress and birth control were associated with Plaintiff's migraines in July 2008, the ALJ does not cite to any evidence that shows quitting her job and/or stopping birth control alleviated Plaintiff's migraines. The ALJ's finding is thus not based on substantial evidence and appears to be speculation.

Lastly, the ALJ found medical records postdating Plaintiff's date last insured did not indicate she was still experiencing migraines. AR at 1046 (citing *id.* at 929-32). The ALJ also found that despite allegations of issues with concentration and focus, Plaintiff displayed normal

---

[4] The ALJ cites to AR 470 as documentation that Plaintiff quit her job, however, this information is located at AR 469.

attention and concentration during consultative evaluations in May 2009 and July 2010 and during examinations. *Id.* (citing *id.* at 476-79, 620-26, 942, 957).[5] Similar to fibromyalgia, however, migraines cannot be diagnosed with objective tools. *McPherson v. Colvin*, 2015 WL 6692243, at *4 (W.D. Wash. Nov. 2, 2015) (a migraine diagnosis is dependent upon the patient's description of symptom patterns). Therefore, these findings, without more, are not clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's testimony.

### 3. *Activities of Daily Living*

The ALJ found Plaintiff's activities of daily living were inconsistent with her allegations of disabling functional limitations. AR at 1047. Plaintiff alleged she was no longer able to crochet or scrapbook, however, the ALJ found her treatment records showed she "enjoyed scrapbooking, crocheting, knitting, painting, and drawing, and that she continued to do a lot of crafts in 2011." *Id.* The ALJ also found the record showed that Plaintiff ran her household, was an "enthusiastic" housekeeper, and was the primary caretaker for her son. *Id.* at 1047-48. The ALJ further noted that Plaintiff reported her husband usually drove her around due to her anxiety, but her husband works and she drove her children to school daily during the school year. *Id.* at 372, 624, 1067.

Plaintiff argues the ALJ mischaracterized the record with regard to her activities of daily living. (Dkt. # 16 at 9-10.) Specifically, Plaintiff notes that while Plaintiff reported she enjoys crocheting, she also reported she is "unable to do it constantly due to the pain [she] experience[s]." (*Id.* at 9); AR at 374. Plaintiff also notes that while she reported that she keeps her home tidy, the ALJ cited no evidence establishing she did not receive help from her family in cleaning her home. (*Id.* at 10.) Plaintiff further notes that both Plaintiff and her husband reported

---

[5] The ALJ also cited to an examination note as an example of Plaintiff displaying normal attention and concentration. AR at 1047. This record, however, does not address Plaintiff's attention or concentration.

that he and their children assisted Plaintiff in performing almost all the household chores. *Id.*
(citing AR at 99-100, 381, 412, 513). Lastly, Plaintiff notes that although Plaintiff stated her
husband usually drove her places due to her anxiety, she also stated she only drove when her
husband was not available. (*Id.* at 10.)

The Court agrees that the ALJ mischaracterized Plaintiff's activities of daily living by
failing to consider her activities in the context of other records and statements regarding
Plaintiff's limited ability to perform those activities. Thus, inconsistencies between Plaintiff's
alleged impairments and her activities of daily living were not a sufficient reason to discount her
testimony.

### 4. *Impairments Controlled with Treatment*

Lastly, the ALJ found Plaintiff's impairments were reasonably controlled with treatment.
AR at 1047. With regard to Plaintiff's mental health impairments, Plaintiff alleged she suffered
from bipolar disorder, depression, and anxiety. *Id.* at 331, 376-77, 1071. The ALJ found clinical
notes from a few months before Plaintiff's alleged onset date showed her bipolar and depression
were well controlled with medication. *Id.* at 1047 (citing *id.* at 461.) The ALJ also noted that
despite Plaintiff's mood complaints, she exhibited normal and appropriate mood and affect
during mental status exams. *Id.* (citing *id.* at 684, 696, 731, 791, 798, 881, 942).

Plaintiff argues the ALJ cherry picked the evidence with regard to Plaintiff's mental
impairments, and the Court agrees. (Dkt. # 16 at 8-9.) For example, one of the clinical notes (AR
at 461) cited by the ALJ states Plaintiff's mental impairments were well controlled with
medication, however, it also states her Celexa was not working, and the provider prescribed her
new medication, Wellbutrin. *Id.* at 461. A review of the record shows that clinical notes from
Plaintiff's following visit reflect that the new medication caused her to have "increased temper,

she was dizzy, she was nauseated and lightheaded. She felt sad and withdrawn. She states she just couldn't tolerate it so she had to stop it…she now refuses to get on Wellbutrin." *Id.* at 462. The ALJ also erroneously cited to assessment records that do not address Plaintiff's mental impairments or her treatment. *Id.* at 614, 616. Accordingly, the Court finds the ALJ improperly cherry-picked the record in finding Plaintiff's impairments were reasonably controlled with treatment, and thus this is not a sufficient reason, supported by substantial evidence, for discounting Plaintiff's testimony.

In sum, the ALJ erred in discounting Plaintiff's subjective symptom testimony. Because Plaintiff's testimony indicates she is more limited than provided in the RFC, this error is not harmless. *See Molina*, 674 F.3d at 1115. Accordingly, this matter must be remanded for the ALJ to reconsider Plaintiff's subjective symptom testimony and provide legally sufficient reasons for discounting her testimony, should such a conclusion be warranted.

### C.    The ALJ Erred in Evaluating the Opinion Evidence

Plaintiff takes issue with the ALJ's assessment of, *inter alia*, the opinions of Dr. Picco, Ms. Young, and Chiropractor Jeffrey. Plaintiff argues that the ALJ's rejection of these opinions were based on the same reasons the ALJ provided for discounting Plaintiff's testimony, and Plaintiff therefore asserts the same arguments she made with regard to the ALJ's assessment of her testimony. (Dkt. ## 16 at 12-14, 20 at 7.) Specifically, Plaintiff asserts that by citing to inconsistencies between the opinions and the longitudinal treatment history, objective clinical findings, Plaintiff's activities of daily living, and Plaintiff's performance on physical exams, the ALJ makes conclusory, boilerplate assertions that do nothing more than ignore the opinions. (*Id.* at 11-16.)

*1.*     *Dr. Amy Picco*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn*, 495 F.3d at 631. A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

In January 2011, Dr. Picco conducted a physical capacity evaluation of Plaintiff. AR at 672-75. Dr. Picco opined that Plaintiff was unable to sustain even sedentary work due to pain and fatigue. *Id.* at 673-74. In his 2015 decision, ALJ Meyers accorded Dr. Picco's opinion little weight for the following reasons: 1) it is inconsistent with the longitudinal treatment history, objective clinical findings, Plaintiff's performance on physical exams, and her activities of daily living; 2) it is internally inconsistent with her functional assessment finding Plaintiff can lift and carry ten pounds frequently and twenty pounds occasionally, and that she can sit for more than

six hours and stand/walk for two hours in an eight-hour workday; and 3) it is based in part on Plaintiff's self-report. *Id.* at 20-21.

As a threshold matter, Plaintiff argues that despite the ALJ's acknowledgment that the prior ALJ assigned little weight to Dr. Picco's opinion, the ALJ did not actually adopt or reject this assignment of weight. (Dkt. # 16 at 12.) Plaintiff further argues the ALJ erred by simply ignoring Dr. Picco's opinion. (*Id.* at 14).

Plaintiff's arguments are unpersuasive. ALJ Robinson generally incorporated ALJ Meyers' discussion and summary of the evidence into the current decision. AR at 1041. Regarding Dr. Picco's opinion, ALJ Robinson's decision states:

> Judge Meyers assigned little weight to the opinions of Ryan Jeffrey, DC, Amy Picco, MD (Exhibits 10F/3 and 21F/2-3). He also assigned little weight to the lay witness statement (including testimony) of Christopher Oliverson, S. Raydeen Jacques, and Lisa Ford (June 2012 Hearing/Transcript, 8E, 16E, 17E, and 18E). I note that the District Court did not disturb Judge Meyer[sic]'s analyses of the lay witness statements. I agree with his assessment of the testimony and statements and incorporate them into the current decision.

*Id.* The Court can draw reasonable inferences from the ALJ's decision. Thus, although ALJ Robinson's language regarding incorporating ALJ Meyers' assessment could be read as only applying to the lay witness statements, a plain reading of the decision as a whole, and inferences reasonably drawn from the decision, supports her incorporation of ALJ Meyers' assignment of little weight to Dr. Picco opinion. *See Magallenes,* 881 F.2d at 755. The ALJ's failure to explicitly include Dr. Picco's name in the last sentence is not dispositive. Further, ALJ Robinson did not ignore Dr. Picco's opinion, as she incorporated ALJ Meyers' detailed assessment of Dr. Picco's opinion.[6]

---

[6] Plaintiff makes the same arguments in asserting ALJ Robinson failed to incorporate ALJ Meyers' assessment of Chiropractor Jeffrey's opinion and that in doing so, ignored his opinion. For the same reasons discussed with regard to Dr. Picco, the Court finds ALJ Robinson did incorporate ALJ Meyers' assignment of little weight to Chiropractor Jeffery's opinion in the current decision.

In giving Dr. Picco's opinion little weight, the ALJ listed the same reasons provided for discounting Plaintiff's testimony. AR at 1048 (adopting *id.* at 21). As discussed above, these reasons are insufficient. Physical examinations showing normal findings do not disprove Plaintiff's reported symptoms from her fibromyalgia. The ALJ also mischaracterized the record with regard to Plaintiff' activities of daily living, and cherry-picked the evidence to find Plaintiff's symptoms were well controlled with treatment. The ALJ also discounted Dr. Picco's opinion because it was based, at least in part, on Plaintiff's subjective testimony. AR at 1048 (adopting *id.* at 21). However, the Court has found the ALJ erred in her evaluation of Plaintiff's testimony.

Lastly, the ALJ found Dr. Picco's opinion was internally inconsistent with her functional assessment that Plaintiff could carry 10 pounds frequently and 20 pounds occasionally, and that she could sit for more than six hours and stand/walk for two hours in an eight-hour day. AR at 1048 (adopting *id.* at 21). The Court finds the ALJ could reasonably find an internal inconsistency in Dr. Picco's opinion because she opined Plaintiff's pain is so disabling that it would prevent her from working even at a sedentary position, however, she assessed Plaintiff's function abilities at a level consistent with sedentary work. AR at 674; SSR 83-10, 1983 WL 31251 (noting that for sedentary work periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday and lifting no more than 10 pounds at a time.). Although there may appear to be an internal inconsistency in Dr. Picco's opinion, this alone does not meet the specific and legitimate standard required to discount Dr. Picco's opinion, especially in light of the other errs made in evaluating the opinion and the unusual diagnostic challenges associated with fibromyalgia.

The ALJ's errors regarding Dr. Picco's must be deemed harmful. Had the ALJ appropriately evaluated this opinion, her nondisability determination may have been different. *See Molina*, 674 F.3d at 1115. Accordingly, the ALJ should reevaluate Dr. Picco's opinion on remand.

### 2. The "Other Source" Opinions

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

### a. Ryan Jeffery, DC

In May 2010, Chiropractor Jeffrey provided an assessment of Plaintiff. AR at 599. Dr. Jeffrey opined that Plaintiff demonstrated signs of fibromyalgia migraine headaches, and he "[knew] it is difficult for her to work and carry on a full time job because of these conditions."

*Id.* ALJ Meyers gave Chiropractor Jeffrey's opinion little weight for the same reasons given for discounting Dr. Picco's opinion. *Id.* at 20-21.

As discussed above, the Court finds inconsistency between Chiropractor Jeffrey's opinion and the longitudinal treatment history, the objective medical findings, Plaintiff's activities of daily living, and Plaintiff's performance on physical examinations are not specific and germane reasons to give Chiropractor Jeffrey's opinion little weight. The ALJ also discounted Chiropractor Jeffrey's opinion because it was based, at least in part, on Plaintiff's self-reports. AR at 1048 (adopting *id.* at 21). However, the Court has found the ALJ erred in her evaluation of Plaintiff's testimony.

The ALJ's errors regarding Chiropractor Jeffrey's opinion must once again be deemed harmful. Had the ALJ appropriately evaluated this opinion, her nondisability determination may have been different. *See Molina*, 674 F.3d at 1115. Accordingly, the ALJ should reevaluate Chiropractor Jeffrey's opinion on remand.

> b.      Kristine Young, PA-C

Ms. Young provided two medical opinions regarding Plaintiff's impairments. AR at 819. In January 2012, she opined Plaintiff was unable to sit, stand, and walk for a total of eight hours a day, and that she had manipulative limitations. *Id.* at 819-24, 1030-36. In January 2015, Ms. Young opined, *inter alia*, Plaintiff was unable to sit or stand/walk for two hours a day in an eight-hour workday. Ms. Young also opined Plaintiff required flexibility to alternate positions at will, needed to elevate her legs 50% of the time, and could only rarely lift less than ten pounds. *Id.* She also opined Plaintiff's pain and symptoms would interfere with her attention and concentration on simple work tasks and that Plaintiff was incapable of performing even low

stress jobs. *Id.* at 1031. Lastly, Ms. Young opined Plaintiff would miss more than four days of work per month due to her impairments. *Id.* at 1034.

The ALJ discounted Ms. Young's January 2012 opinion because it was inconsistent with the objective medical evidence. AR at 1049. Specifically, the ALJ found Ms. Young's opinions regarding Plaintiff's lift, carry, and manipulation limitations were inconsistent with the minimal findings on examinations. *Id.* Plaintiff also had no synovitis, showed normal range of motion in all extremities, including her hands, fingers, wrists, shoulder, ankles, knees, and hips during examinations. *Id.* at 476-79, 518, 1019, 1022. As discussed above, inconsistency with the objective medical evidence is not a sufficient reason to discount Ms. Young's opinion. Normal clinical findings are to be expected with fibromyalgia, and thus this is not a specific and germane reason to discount Ms. Young's opinion. *See Revels*, 874 F.3d at 663.

The ALJ also discounted Ms. Young's January 2015 opinion. Specifically, the ALJ found the opinion reflected advocacy by Ms. Young. AR at 1049. The ALJ noted that despite normal objective medical findings, Ms. Young continued to opine Plaintiff had extreme limitations. *Id.* For example, Ms. Young opined Plaintiff needed to elevate her legs 50% of the time, however, there was no evidence in the record, such as chronic swelling or edema, that would warrant such a finding. *Id.* Ms. Young herself did not indicate that Plaintiff had subjective swelling in her 2015 opinion, (*id.* at 1030), nor did she indicate such in numerous other exams. Although an ALJ is entitled to discount an opinion rendered by a provider in an advocacy role, the ALJ appears to base Ms. Young's advocacy on the inconsistency of her opinion and the objective medical findings. *See Matney ex.rel. Matney v. Sullivan,* 981 F.2d 1016, 1020 (9th Cir. 1992) (affirming an ALJ's finding that a doctor's opinion was "entitled to less weight because he had agreed to

become an advocate and assist in presenting a meaningful petition for Social Security benefits"). This is an insufficient reason to discount Ms. Young's opinion.

The ALJ also discounted Ms. Young's opinions because they were inconsistent with Plaintiff's daily activities. As discussed above, the Court has already found the activities cited by the ALJ are not necessarily inconsistent with Plaintiff's alleged impairments, given Plaintiff's testimony regarding the help she receives from other in performing them. In addition to the activities identified by the ALJ in her evaluation of Plaintiff's testimony, the ALJ cited several other activities, such as shopping, traveling, using public transportation, maintaining her household, and caring for her children, which were reported on a checklist in Ms. Young's opinion. However, the record does not include any details regarding when and how Plaintiff is able to perform these activities. AR at 824. Inconsistency with Plaintiff's activities of daily living is therefore not a specific and germane reason to discount Ms. Young's opinion.

The ALJ also discounted Ms. Young's opinion because it was based, at least in part, on Plaintiff's self-reports. AR at 21. As discussed above, the ALJ erred in discounting Plaintiff's symptom complaints and therefore this is not a specific, germane reason for assigning less weight to Ms. Young's opinion.

Lastly, the ALJ discounted Ms. Young's January 2015 opinion because it was conducted two years after Plaintiff's date last insured and did not relate back to the relevant period at issue. AR at 1049. A medical opinion or evaluation may be relevant even if several years have passed between the date last insured and the date of the examination basis. *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir. 1988). The mere fact that the opinions were rendered after the date last insured, without more, is not sufficient if such opinions are still "relevant to assess the claimant's disability." *Id.* Here, the other reasons provided by the ALJ are not specific and germane, and

therefore the fact the opinion was rendered after the date last insured is not a sufficient reason to discount the opinion.

Because the ALJ failed to articulate specific and germane reasons to reject Ms. Young's opinion, the ALJ should reevaluate Ms. Young's January 2012 and June 2015 opinions on remand.

c. Christopher Oliverson, S. Raydeen Jaques, and Lisa Ford

The ALJ also considered lay witness statements from Plaintiff's family. AR at 1048. Christopher Oliverson, Plaintiff's husband, provided a function report, a letter, and testified at the 2012 hearing. *Id.* at 69-76, 379-86, 412-13. Raydeen Jaques, Plaintiff's mother, provided a letter. *Id.* at 415-16. Lisa Ford, Plaintiff's sister, provided a written statement. *Id.* at 410.

The ALJ discounted the lay witness statements because she found that the observations of each witness were similar to Plaintiff's own subjective complaints of disability regarding mobility, pain, fatigue, depression, and anxiety. AR at 1048 (adopting *id.* at 21). Because the ALJ provided no other reason for discounting the statements, and the Court has already determined this matter must be remanded for the ALJ to reevaluate Plaintiff's symptom testimony, this was not a specific and germane reason to discount the lay witness statements. Accordingly, the ALJ should also reevaluate the lay witness testimony on remand.

**D.     Remand Requires a Reevaluation of the Analysis at Steps Four and Five**

Plaintiff argues the ALJ's RFC determination fails to account for all of Plaintiff's limitations. (Dkt. # 16 at 16-17.) Plaintiff also argues that the ALJ's step five findings that there are jobs Plaintiff can perform based on the RFC, which does include these alleged limitations, is defective. (*Id.* at 17.)

The Court has already concluded that the ALJ's erred in evaluating Plaintiff's testimony and opinion evidence. Therefore, the ALJ must also reassess the RFC on remand. *See* Social Security Ruling 96-8p ("The RFC assessment must always consider and address medical source opinions."); *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, he must also re-evaluate the findings at Step Five to determine if Plaintiff can perform the jobs identified by the vocational expert in light of the new RFC.

### E.    Whether the Case Should be Remanded for an Award of Benefits

Plaintiff argues this case should be remanded for an award of benefits. (Dkt. # 16 at 17.) The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Specifically, benefits should be awarded where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find claimant disabled were such evidence credited. *Smolen*, 80 F.3d at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

The Court has determined, based on the above identified errors, that several issues remain which must be resolved concerning Plaintiff's testimony, the medical opinion evidence, and lay witness testimony. Therefore, remand for further administrative proceedings is appropriate.

## V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate Plaintiff's testimony, Dr. Picco's opinion, Chiropractor Jeffrey's opinion, Ms. Young's opinions, the lay witness statements of Plaintiff's family members, and the analysis at step four and five.

Dated this 13th day of August, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge